# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
Case No. 1:25-cv-21-MR-WCM

KAREN PEAY,                              )
                                         )
      Plaintiff,                    )
                                         )          **COMPLAINT**
   v.                                 )          *(JURY DEMAND)*
                                         )
CITY OF ASHEVILLE,                       )
                                         )
      Defendant.                    )


**NOW COMES** the Plaintiff, Karen Peay ("Plaintiff"), by and through undersigned counsel, hereby complaining of Defendant as follows:

## PRELIMINARY STATEMENT

1. This is an action to recover money damages arising out of Defendant's violation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1983, The Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 623(a)(1), and in violation of North Carolina public policy as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. Ann. § 143-422 et seq, N.C. Gen. Stat. § 126-85, as well as a negligence action in which Plaintiff seeks compensatory damages for Defendant's negligence.

2. Plaintiff's claims arise out of Defendant's unlawful discrimination against Plaintiff on account of her age, sex, and race during her employment with the City of Asheville.

3. As a result of these incidents, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

4. Plaintiff has exhausted her administrative remedies in that she filed a charge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 623(a)(1), and N.C. Gen. Stat. § 143-422.2 with the United States Equal Employment Opportunities Commission ("EEOC") through the Civil Rights Division of the North Carolina Office of Administrative Hearings setting forth the facts and circumstances supporting her claims herein and received notice of her right to sue.

5. This action and all associated claims have been timely brought within the applicable statutes of limitations.

6. Plaintiff seeks monetary damages (compensatory and punitive) against Defendant, as well as an award of costs and attorneys' fees, and such other relief as the Court may deem just and proper.

**PARTIES**

7. Plaintiff is a natural person domiciled at all relevant times in Buncombe County, North Carolina.

8. Plaintiff is an "employee" of Defendant City of Asheville as defined by 42 U.S.C. § 2000e, 29 USC § 630(b), and a "career State employee" as defined by N.C. Gen. Stat. § 126-1.1.

9.  Defendant City of Asheville (Defendant "City") is a municipal entity organized under the laws of the State of North Carolina, has an elected Board of Commissioners has the authority to sue and be sued, and, upon information and belief, was at all times relevant herein acting within the course and scope of its authority under color of law and is an "employer" as defined by 42 U.S.C. § 2000e.

10. Upon information and belief, Defendant City and its agents thereof have waived the defense of sovereign immunity through the purchase of liability insurance and/or participation in a qualifying risk pool.

11. Defendant City is not incompetent, a minor, nor a member of the armed services.

12. At all times relevant hereto, Defendant City was responsible for the policy, practice, supervision, implementation, and conduct of all employee matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all personnel, agents, office holders, supervisors, as well as the individually named employees herein.

13. In addition, at all times relevant, Defendant City was responsible for enforcing the rules of the City of Asheville, and for ensuring that personnel obey the laws of the United States and the State of North Carolina.

## JURISDICTION AND VENUE

14. The Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the Constitution and law of the United States of America. The Court also has jurisdiction under 28 U.S.C. § 1343, as this action seeks redress for civil rights violations under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, 42 U.S.C. § 1983, the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 623(a)(1), and North Carolina public policy as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. Ann. § 143-422 et seq, N.C. Gen. Stat. § 126-85.

15. The United States District Court for the Western District of North Carolina has personal jurisdiction because Defendant conducts business in Buncombe County, North Carolina, which is located within this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), insomuch as Defendant conducts business within the Western District of North Carolina, and a substantial part of the events or omissions giving rise to these claims occurred in this District.

17. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims because those state law claims arise out of the same nucleus of operative fact as the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1983 claims.

18. Plaintiff's claims for relief are predicate upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1983, which authorize actions to redress the deprivation, under color of state law, rights, privileges and immunities secured to the Plaintiff by the laws of the United States.

19. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202, and Rules 57 and 65 of the Federal Rules of

Civil Procedure, as well as claims for nominal and compensatory damages against Defendant City.

20. Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988.

21. Plaintiff is informed, believes, and therefore alleges that in engaging in the conduct alleged herein, Defendant acted with the intent to deprive Plaintiff of her civil rights, and/or with reckless or callous indifference toward Plaintiff's federally protected rights.

22. As a result of the foregoing, Plaintiff seeks compensatory and punitive damages against the Defendant City.

23. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

24. The evidence establishing liability for the causes of action will be similar, and neither issue will predominate nor create confusion for a jury.

## FACTUAL ALLEGATIONS

25. Plaintiff is an African American woman over the age of 40.

26. Upon information and belief, Plaintiff is the oldest employee in her department, where most co-workers and management are white. Additionally, she is the only African American employee in her department.

27. Plaintiff has been an employee of Defendant City for approximately seven years.

28. During her employment with the City of Asheville, Plaintiff has reported to the same general manager, Mr. Chris Coal, and has also been supervised by intermediate supervisors, Mr. Chad Gray and Ms. Chastity Wilson.

29. On or about January 12, 2021, Plaintiff was approached by her coworker, Mr. Gene Blankenship, an employee of Defendant City.

30. On or about that time, Mr. Blankenship placed his hand over Plaintiff's shoulder and remarked that he has a wall of horse whips at home that he looks at and that makes him think of her. Mr. Blankenship then proceeded to name off the different kinds of whips that he owns, stating that he could use them on Plaintiff, while laughing.

31. Upon information and belief, Mr. Blankenship made these comments with the purpose of harassing Plaintiff.

32. Upon information and belief, Mr. Blankenship's comments were made with the motivation of being racially discriminatory, sexist, and were specifically directed at the Plaintiff due to her being an elderly, African American woman.

33. As a result of this incident, the Plaintiff became distressed and felt unsafe and uncomfortable working in the presence of Mr. Blankenship.

34. On or about January 12, 2021, Plaintiff promptly notified both Mr. Chad Gray and Mr. Chris Coal regarding the disturbing comments made to her by Mr. Blankenship.

35. On or about that time, Plaintiff reported this incident to several Human Resources employees.

36. Despite these reports, no action was taken to address or rectify the disturbing comments made to Plaintiff by Mr. Blankenship.

37. Following the failure of Human Resources and Plaintiff's supervisors to address the issue, and the later rejection of Plaintiff to transfer, Plaintiff took steps to avoid any interactions with Mr. Blankenship while at work.

38. On or about February 18, 2021, Plaintiff encountered Mr. Blankenship again at work, which caused her to become so emotionally distressed that she began crying and was compelled to leave the building.

39. While in distress, Plaintiff approached Mr. Coal to inquire about the actions taken to address the situation with Mr. Blankenship and requested to be assigned to a different building to avoid further contact with him. In response, Mr. Coal advised Plaintiff to "clean herself up," suggested she seek therapy, and informed her that she needed to be clocked in for work on Monday.

40. Upon information and belief, another similarly situated employee of the Defendant City, identified as Carly, whose full name is unknown, who is white, was permitted to transfer to a different building after experiencing personal issues with fellow co-workers, including her supervisor Ms. Wilson.

41. Upon information and belief, no action was taken to address the issue or prevent further interactions between Plaintiff and Mr. Blankenship.

42. On or about February 22, 2021, Plaintiff was given a sudden, poor job performance evaluation.

43. Upon information and belief, no other employee was given a job performance evaluation.

44. Upon information and belief, this job performance evaluation was made as a result of Plaintiff's report of discrimination and request to transfer.

45. On or about March 8, 2021, Human Resources conducted an inquiry and investigation into a report of harassment made by another employee, Roxanne Gover, a white woman, regarding Mr. Blankenship. Human Resources instructed Ms. Gover not to speak of the incident again and prohibited her from sharing details of the matter with the Plaintiff.

46. On or about March 10, 2021, the Plaintiff was reassigned to perform tasks that were not assigned to other employees. Specifically, Plaintiff was required to paint a building by herself and was tasked with driving a transportation van to transport homeless individuals to receive Covid-19 vaccinations.

47. Plaintiff expressed concerns about performing this work due to the lack of sufficient precautions in place to protect her from potential exposure to the Covid-19 virus, particularly given her status as an elderly woman. Additionally, Plaintiff encountered threatening comments from one of the clients riding in the van, which she promptly reported to Mr. Chris Coal and Mr. Chad Gray.

48. Despite these concerns and reports, Plaintiff was still required to drive the van.

49. Upon information and belief, these tasks were assigned as a result of Plaintiff's report of discrimination and request to transfer.

50. On or about July 2022, Plaintiff tried on an event costume for an event hosted by the City of Asheville, of which a coworker took a photograph.

51. During her employment, Plaintiff and her coworkers had frequently tried on event costumes.

52. Upon seeing the photograph of Plaintiff in the costume, Ms. Wilson instructed the Plaintiff to "get out of her face" and subsequently issued Plaintiff a written warning for trying on the costume.

53. Prior to this incident, the Plaintiff had never been reprimanded or issued a written warning during the course of her employment.

54. Upon information and belief, no other coworkers had received reprimands or warnings for trying on event costumes.

55. Upon information and belief, trying on the event costumes is not against Defendant City's employment policy.

56. Upon information and belief, this write up was specifically made against Plaintiff due to her report of discrimination and request to transfer.

57. Upon information and belief, this write up was specifically made against Plaintiff due to her being an elderly, African American woman.

58. On or about this time, Ms. Wilson informed other employees of Plaintiff's "write up."

59. This disclosure was made in violation of Defendant City's employment policy.

60. Upon information and belief, this disclosure was made due to Plaintiff being an elderly, African American woman.

61. As a result of this disclosure, Plaintiff experienced further embarrassment in her workplace and began looking for different Defendant City positions.

62. On or about February 2023, Plaintiff applied to be a Facility Attendant, a Defendant City position in a different building. The Plaintiff applied for this position with the assistance and referral of a Human Resources employee, to whom the Plaintiff had previously reported an incident of discrimination.

63. Upon information and belief, Plaintiff was the only applicant for the position.

64. On or about this time, Plaintiff informed Mr. Coal that she had applied for the Facility Attendant position.

65. Upon information and belief, Mr. Coal went into the Defendant City system and rejected Plaintiff's application.

66. Following this incident, upon information and belief, the Facility Attendant position was eventually filled by a white woman.

67. Upon information and belief, Plaintiff was not hired as a result of Plaintiff's report of discrimination and request to transfer.

68. Upon information and belief, Plaintiff was not hired for the position due to her being an elderly, African American woman.

69. On or about March 2023, Plaintiff reported discrimination for the write up and rejected application to Human Resources and filed a grievance.

70. Despite these reports, no action was taken to rectify the write up and rejected application.

71. Despite these reports, Plaintiff continued to experience maltreatment at work, including being assigned additional tasks and incurring hostile interactions with supervisors.

72. As a result of these incidents, Plaintiff's mental health declined, forcing her to take leave under the Family Medical Leave Act.

73. On or about July 18, 2023, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC"). On July 19, 2023, Plaintiff received a letter informing her of her right to sue.

74. On or about October 2, 2023, Ms. Peay filed a civil complaint *pro se* in Buncombe County Superior Court, case file 23-CV-03952.

75. On or about that time, Plaintiff again reported the harassment and retaliation to Ms. Deborah Campbell, the City Council Manager, while being visibly upset and experienced a hostile interaction.

76. On or about that time, Plaintiff spoke to a Human Resources employee, who advised the Plaintiff that the City intended to have her case in Buncombe County Superior Court dismissed due to her inability to find legal representation.

77. On or about January 25, 2024, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice.

78. Upon information and belief, other African American employees in addition to Plaintiff have experienced a hostile work environment based on racial discrimination at City of Asheville, but they do not report their concerns because they believe nothing will be done by the management, or they fear retaliation.

79. Upon information and belief, Plaintiff's poor performance evaluation, the assignment of different job duties, and the failure to transfer her to a different position in a different building so that she might avoid future harassment were all

in response to and in retaliation for Plaintiff reporting harassment and discrimination due to her being an elderly, African American woman.

80. As a direct and proximate result of the acts of Defendant City and its employees, Plaintiff has suffered the following injuries and damages: violation of her civil rights, lost income, emotional trauma and suffering, including fear, intimidation, embarrassment, humiliation, emotion distress, frustration, extreme inconvenience, anxiety, and harm to reputation.

81. Defendant City knew or should have had reason to know of its' employees propensity to violate the civil rights of others, yet failed to appreciate the risk posed to Plaintiff and other employees and further failed to take adequate precautions to prevent the conduct described herein.

82. Defendant City was knowingly and deliberately indifferent to the possibility that its officers were wont to violate the civil rights of employees as described herein.

83. During all of the events described, Defendant City and its employees acted maliciously, willfully, knowingly and with the specific intent to injure Plaintiff and violate her civil rights.

84. Some of the Defendant City's employees who did not participate in the conduct but who otherwise observed the violation of Plaintiff's civil rights failed to intercede on Plaintiff's behalf.

85. Upon information and belief, the Defendant City and their respective policymakers, officials or supervisors have approved or acquiesced to policies,

customs or patterns and practices within the City of Asheville's that resulted in the unlawful harassment, discrimination, and discipline of Plaintiff.

86. Upon information and belief, Defendant City and their respective policy makers, officials or supervisors have failed to provide adequate training that resulted in the unlawful harassment, discrimination and discipline of Plaintiff.

## FIRST CAUSE OF ACTION
*Harassment and Discrimination Creating a Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964*

87. The above paragraphs are incorporated herein by reference as if fully set forth below.

88. Title VII of the Civil Rights Act of 1964 (Title VII) makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of race or sex. 42 U.S.C. § 2000e–2(a)(1) (2013).

89. Defendant City is an employer as defined by 42 U.S.C. § 2000e.

90. The protections of Title VII of the Civil Rights Act of 1964 extend to situations where employees are required to work in a discriminatorily or abusively hostile environment. Harris v. Forklift Sys., 510 U.S. 17, 21 (1993).

91. For a Plaintiff to succeed in a hostile work environment claim under Title VII of the Civil Rights Act of 1964, the Plaintiff must show that "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for

imposing liability on the employer. <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Causey v. Balog</u>,162 F.3d 795, 801 (4th Cir. 1998)).

92. Plaintiff experienced invidious comments by her coworker, Mr. Blankenship, that were not only unwanted but also inappropriate and offensive to her.

93. These comments were clearly discriminatory, targeting Plaintiff because of her race, gender, and age, and were intended to demean and humiliate her.

94. The harassment was severe and pervasive, as Plaintiff made various reports of experiencing emotional distress, feeling unsafe at work, and being forced to avoid interactions with the harasser.

95. Despite reporting these incidents to her supervisors and Human Resources, Defendant City failed to take appropriate action, and the Plaintiff continued to face mistreatment, including being assigned undesirable tasks, receiving an unjustified poor performance evaluation, and having her application for a different position rejected.

96. Defendant City's failure to address the harassment and retaliation provided a basis for imposing liability, as the employer had notice of the mistreatment and failed to take corrective measures.

97. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

98. Defendant City's unlawful conduct constitutes a willful and wanton violation of Title VII of the Civil Rights Act of 1964, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

99. Defendant City's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

### SECOND CAUSE OF ACTION
*Harassment and Discrimination Creating a Hostile Work Environment in Violation of The Age Discrimination in Employment Act (ADEA) of 1967*

100. The above paragraphs are incorporated herein by reference as if fully set forth below.

101. The Age Discrimination in Employment Act (ADEA) of 1967 makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of age. 29 U.S.C. § 623(a)(1).

102. Defendant City is an employer as defined by 29 USC § 630(b).

103. The protections of the ADEA extend to situations where employees are required to work in a discriminatorily or abusively hostile environment. Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997).

104. For a Plaintiff to succeed in a hostile work environment claim under the ADEA, the Plaintiff must show that "(1) the harassment was unwelcomE; (2) the harassment was based on her race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive

atmosphere; and (4) there is some basis for imposing liability on the employer." Id.

105. Plaintiff experienced invidious comments by her coworker, Mr. Blankenship, that were not only unwanted but also inappropriate and offensive to her.

106. These comments were clearly discriminatory, targeting Plaintiff because of her race, gender, and age, and were intended to demean and humiliate her.

107. The harassment was severe and pervasive, as Plaintiff made various reports of experiencing emotional distress, feeling unsafe at work, and being forced to avoid interactions with the harasser.

108. Despite reporting these incidents to her supervisors and Human Resources, Defendant City failed to take appropriate action, and the Plaintiff continued to face mistreatment, including being assigned undesirable tasks, receiving an unjustified poor performance evaluation, and having her application for a different position rejected.

109. Defendant City's failure to address the harassment and retaliation provided a basis for imposing liability, as the employer had notice of the mistreatment and failed to take corrective measures.

110. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

111. Defendant City's unlawful conduct constitutes a willful and wanton violation of

ADEA, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

112. Defendant City's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

### THIRD CAUSE OF ACTION
*Harassment and Discrimination Creating a Hostile Work Environment in Violation of N.C.G.S. § 143–422.2*

113. The above paragraphs are incorporated herein by reference as if fully set forth below.

114. The North Carolina Equal Employment Practices Act makes it unlawful for an employer to discriminate against any individual with respect to seeking, obtaining, and holding employment because of race, age or sex. N.C.G.S. § 143–422.2.

115. Defendant City is an employer as defined by N.C.G.S. § 143–422.2.

116. As an African American woman over the age of 40, Plaintiff is a member of a protected class.

117. "The North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143–422.2 insofar as they do not conflict with North Carolina statutes and case law." Head v. Adams Farm Living, Inc., 242 N.C. App. 546, 554 (N.C. Ct. App. 2015) (citing Johnson v. Crossroads Ford, Inc., 749 S.E.2d 102, 107 (N.C. Ct. App. 2013)).

118. The protections of Title VII of the Civil Rights Act of 1964 extend to situations

where employees are required to work in a discriminatorily or abusively hostile environment. <u>Guthrie v. Conroy</u>, 152 N.C. App. 15, 20 (N.C. Ct. App. 2002).

119. For a Plaintiff to succeed in a hostile work environment claim under Title VII of the Civil Rights Act of 1964, the Plaintiff must show that "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Causey v. Balog</u>,162 F.3d 795, 801 (4th Cir. 1998)).

120. Plaintiff experienced invidious comments by her coworker, Mr. Blankenship, that were not only unwanted but also inappropriate and offensive to her.

121. These comments were clearly discriminatory, targeting Plaintiff because of her race, gender, and age, and were intended to demean and humiliate her.

122. The harassment was severe and pervasive, as Plaintiff made various reports of experiencing emotional distress, feeling unsafe at work, and being forced to avoid interactions with the harasser.

123. Despite reporting these incidents to her supervisors and Human Resources, Defendant City failed to take appropriate action, and the Plaintiff continued to face mistreatment, including being assigned undesirable tasks, receiving an unjustified poor performance evaluation, and having her application for a different position rejected.

124. Defendant City's failure to address the harassment and retaliation provided a basis for imposing liability, as the employer had notice of the mistreatment and failed to take corrective measures.

125. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

126. Defendant City's unlawful conduct constitutes a willful and wanton violation of N.C.G.S. § 143–422.2, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

127. Defendant City's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

### FOURTH CAUSE OF ACTION
*Retaliation in Violation of Title VII of the Civil Rights Act of 1964*

128. The above paragraphs are incorporated herein by reference as if fully set forth below.

129. Title VII of the Civil Rights Act of 1964 (Title VII) makes it unlawful for an employer "to discriminate against any of [its] employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a).

130. Defendant City is an employer as defined by 42 U.S.C. § 2000e.

131. For a Plaintiff to succeed in a retaliation claim under Title VII of the Civil Rights Act of 1964, the Plaintiff must show that (1) she engaged in some protected activity, (2) the employer took adverse employment action against plaintiff; and (3) that the protected conduct was a substantial or motivating factor in the adverse action (a causal connection existed between the protected activity and the adverse action). Emp't Sec. Comm'n of N.C. v. Peace, 128 N.C. App. 1, 9, 493 S.E.2d 466, 471 (1997).

132. Plaintiff engaged in protected activity by filing a complaint regarding workplace harassment, which was allegedly based on her race, age, and gender. Additionally, the Plaintiff requested a transfer due to this harassment.

133. After filing a complaint and requesting a transfer due to this harassment, Plaintiff continued to face mistreatment, including being assigned undesirable tasks, receiving an unjustified poor performance evaluation, and having her application for a different position rejected.

134. But for the Plaintiff's engagement in the protected activity of filing a complaint and requesting a transfer due to harassment, Plaintiff would not have continued to face mistreatment, including being assigned undesirable tasks, receiving an unjustified poor performance evaluation, and having her application for a different position rejected.

135. Defendant City's failure to address the harassment and retaliation provided a basis for imposing liability, as the employer had notice of the mistreatment and failed to take corrective measures.

136. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

137. Defendant City's unlawful conduct constitutes a willful and wanton violation of Title VII of the Civil Rights Act of 1964, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

138. Defendant City's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## FIFTH CAUSE OF ACTION
*Retaliation in Violation of The Age Discrimination in Employment Act (ADEA) of 1967*

139. The above paragraphs are incorporated herein by reference as if fully set forth below.

140. The Age Discrimination in Employment Act (ADEA) of 1967 makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of age. 29 U.S.C. § 623(a)(1).

141. Defendant City is an employer as defined by 29 USC § 630(b).

142. An ADEA retaliation claim is subject to the same protected activity analysis as the anti-retaliation provision under Title VII of the Civil Rights Act of 1964. Speck v. City of Memphis, 594 F.Supp.2d 905, 923 (W.D.Tenn. 2009).

143. For a Plaintiff to succeed in a retaliation claim under Title VII of the Civil Rights Act of 1964, the Plaintiff must show that (1) she engaged in some protected activity, (2) the employer took adverse employment action against plaintiff; and (3) that the protected conduct was a substantial or motivating factor in the adverse action (a causal connection existed between the protected activity and the adverse action). Emp't Sec. Comm'n of N.C. v. Peace, 128 N.C. App. 1, 9, 493 S.E.2d 466, 471 (1997).

144. Plaintiff engaged in protected activity by filing a complaint regarding workplace harassment, which was allegedly based on her race, age, and gender. Additionally, the Plaintiff requested a transfer due to this harassment.

145. After filing a complaint and requesting a transfer due to this harassment, Plaintiff continued to face mistreatment, including being assigned undesirable tasks, receiving an unjustified poor performance evaluation, and having her application for a different position rejected.

146. But for the Plaintiff's engagement in the protected activity of filing a complaint and requesting a transfer due to harassment, Plaintiff would not have continued to face mistreatment, including being assigned undesirable tasks, receiving an unjustified poor performance evaluation, and having her application for a different position rejected.

147. Defendant City's failure to address the harassment and retaliation provided a basis for imposing liability, as the employer had notice of the mistreatment and failed to take corrective measures.

148. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

149. Defendant City's unlawful conduct constitutes a willful and wanton violation of ADEA, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

150. Defendant City's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

### SIXTH CAUSE OF ACTION
*Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964*

151. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

152. Title VII of the Civil Rights Act of 1964 (Title VII) makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of race or sex. 42 U.S.C. § 2000e–2(a)(1) (2013).

153. Defendant City is an employer as defined by 42 U.S.C. § 2000e.

154. For a Plaintiff to succeed in a disparate treatment claim under Title VII of the Civil Rights Act of 1964, the Plaintiff must show that (1) she applied for an available position for which she was qualified, (2) that she was rejected, and (3)

that the employer either continued to seek applicants for the position, or, as allegedly occurred in this case, filled the position with a white employee. Patterson v. McLean Credit Union, 491 U.S. 164, 216 (1989).

155. As an African American woman over the age of 40, Plaintiff is a member of a protected class.

156. Plaintiff was qualified for her job, having performed the work for many years without ever being written up or receiving a poor evaluation.

157. Plaintiff's request for transfer and application for a different position was rejected.

158. Upon information and belief, the Facility Attendant position was eventually filled by a white woman.

159. Upon information and belief, Plaintiff was not hired for the position due to her being an elderly, African American woman.

160. Defendant City's failure to address these incidents provided a basis for imposing liability, as the employer had notice of the mistreatment and failed to take corrective measures.

161. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

162. Defendant City's unlawful conduct constitutes a willful and wanton violation of N.C.G.S. § 143–422.2, was outrageous and malicious, was intended to injure

Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

163. Defendant City's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

### SEVENTH CAUSE OF ACTION
*Disparate Treatment in Violation of The Age Discrimination in Employment Act (ADEA) of 1967*

164. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

165. The Age Discrimination in Employment Act (ADEA) of 1967 makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of age. 29 U.S.C. § 623(a)(1).

166. Defendant City is an employer as defined by 29 USC § 630(b).

167. For a Plaintiff to succeed in a disparate treatment claim under the ADEA, the Plaintiff must show that (1) her age was at least 40 years; (2) she was meeting her employer's legitimate expectations at the time of the adverse employment action; (3) the employer took adverse employment action against her; and (4) the employer took that adverse employment action under circumstances giving rise to an inference of age discrimination. Gilliam v. Bertie Cnty. Bd. of Educ., No. 2:20-CV-16-D, 2022 WL 843090, at *4 (E.D. N.C. Mar. 21, 2022) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-13 (1996)).

168. As an African American woman over the age of 40, Plaintiff is a member of a protected class.

169. Plaintiff was qualified for her job, having performed the work for many years without ever being written up or receiving a poor evaluation.

170. Plaintiff's request for transfer and application for a different position was rejected.

171. Upon information and belief, the Facility Attendant position was eventually filled by a white woman.

172. Upon information and belief, Plaintiff was not hired for the position due to her being an elderly, African American woman.

173. Plaintiff continued to face mistreatment, including being assigned undesirable tasks, receiving an unjustified poor performance evaluation, and having her application for a different position rejected due to her being an elderly, African American woman.

174. Defendant City's failure to address these incidents provided a basis for imposing liability, as the employer had notice of the mistreatment and failed to take corrective measures.

175. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

176. Defendant City's unlawful conduct constitutes a willful and wanton violation of

N.C.G.S. § 143–422.2, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

177. Defendant City's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

**EIGHTH CAUSE OF ACTION**
*Disparate Treatment in Violation of N.C.G.S. § 143–422.2*

178. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

179. The North Carolina Equal Employment Practices Act makes it unlawful for an employer to discriminate against any individual with respect to seeking, obtaining, and holding employment because of race, age or sex. N.C.G.S. § 143–422.2.

180. Defendant City is an employer as defined by N.C.G.S. § 143–422.2.

181. "The North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143–422.2 insofar as they do not conflict with North Carolina statutes and case law." Head v. Adams Farm Living, Inc., 242 N.C. App. 546, 554 (N.C. Ct. App. 2015) (citing Johnson v. Crossroads Ford, Inc., 749 S.E.2d 102, 107 (N.C. Ct. App. 2013)).

182. For a Plaintiff to succeed in a disparate claim pursuant to N.C.G.S. § 143–422.2, the Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for his job and his job performance was satisfactory; (3) she was denied

employment or promotion; and (4) other employees who are not members of the protected class were hired or promoted under apparently similar circumstances. North Carolina Dept. of Correction v. Hodge, 99 N.C. App. 602, 611 (N.C. Ct. App. 1990).

183. As an African American woman over the age of 40, Plaintiff is a member of a protected class.

184. Plaintiff was qualified for her job, having performed the work for many years without ever being written up or receiving a poor evaluation.

185. Plaintiff's request for transfer and application for a different position was rejected.

186. Upon information and belief, the Facility Attendant position was eventually filled by a white woman.

187. Upon information and belief, Plaintiff was not hired for the position due to her being an elderly, African American woman.

188. Defendant City's failure to address these incidents provided a basis for imposing liability, as the employer had notice of the mistreatment and failed to take corrective measures.

189. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

190. Defendant City's unlawful conduct constitutes a willful and wanton violation of

N.C.G.S. § 143–422.2, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

191. Defendant City's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

### NINTH CAUSE OF ACTION
*Negligent Hiring, Retention and Supervision under North Carolina State Law*

192. The above paragraphs are incorporated herein by reference as if fully set forth below.

193. Defendant City owed a duty of care to Plaintiff to adequately hire, retain and supervise its employees.

194. Defendant City breached that duty of care in failing to adequately hire, retain and supervise its employees.

195. Defendant City placed its employees in a position where they could inflict foreseeable harm.

196. Defendant City knew or should have known of its employees' propensity for violating the individual rights granted under the laws of the State of North Carolina, prior to the injuries incurred by Plaintiff.

197. Defendant City failed to take reasonable measures in hiring, retaining and supervising its employees that would have prevented the aforesaid injuries to Plaintiff.

198. As an actual, proximate, and foreseeable consequence of Defendant City's

conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
*Municipal "Monell" Liability under 42 U.S.C. § 1983*

199. The above paragraphs are incorporated herein by reference as if fully set forth below.

200. Defendant City's and its employees, collectively and individually, acquiesced in a pattern of discriminatory conduct, and were directly responsible for the violation of Plaintiff's civil rights.

201. Defendant City maintained a policy or custom that caused Plaintiff to be deprived of her civil rights, tacitly approved of such conduct or was deliberately indifferent toward the potential exposure of individuals, such as Plaintiff, to such behavior.

202. Defendant City's employees have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of them.

203. Defendant City, its policymakers and supervisors fail to provide adequate training or supervision to their subordinates, to such an extent that it is tantamount to the City's deliberate indifference towards the rights of those who may come into contact with Defendant City's employees.

204. Defendant City's employees engaged in such egregious and flagrant violations

of Plaintiff's civil rights that the need for enhanced training or supervision is obvious and equates to the display of indifference towards the rights of individuals, who may come into contact with Defendant City's employees.

205. Defendant City's repeated refusal or failure to install or apply corrective of preventative measures constitutes the tacit approval of such behaviors or a deliberate indifference to the rights of those who may be affected by such behavior.

206. Defendant City's conduct caused the violation of Plaintiff's civil rights.

207. As an actual, proximate, and foreseeable consequence of Defendant City's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

**WHEREFORE,** Plaintiff respectfully requests the Court for the following relief:

1. That the Court find the Defendant liable to Plaintiff on all claims asserted.

2. That the Court enter judgment against Defendants in an amount to be determined at trial plus both pre and post judgment interest at the legal rate until paid in full after judgment, the costs of this action and attorneys' fees.

3. That the Court accepts this verified complaint as an affidavit of the Plaintiff from which to base any motions related to this case.

4. That the Plaintiff recovers any further relief that the Court deems just and proper.

Respectfully submitted this 24th day of January, 2025.

/s/ Alyssa Sanchez Wright
King Law Offices, P.C.
1351 N. Center Street
Hickory, North Carolina 28601
T: (828) 288-3085 ext. 2004
E: asanchez@kinglawoffices.com
NCSB No. 60337

/s/ Nicholas A. White
King Law Offices, P.C.
1351 N. Center Street
Hickory, North Carolina 28601
T: (828) 288-3085 ext. 2004
E: nwhite@kinglawoffices.com
NCSB No. 53661

*ATTORNEYS FOR THE PLAINTIFF*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
Case No. _____

KAREN PEAY,                     )
                                )
              Plaintiff,        )
                                )          **VERIFICATION**
        v.                      )
                                )
CITY OF ASHEVILLE               )
                                )
              Defendant.        )


STATE OF NORTH CAROLINA
COUNTY OF _BUNCOMBE_

**KAREN PEAY** being first duly sworn, deposes and says that she is the Plaintiff in the above-captioned matter; that she has read the foregoing complaint and knows the contents thereof and that the same are true to her own knowledge except as to those matters stated on information and belief, and as to those matters she believes them to be true.

_Karen Peay_
KAREN PEAY
*Plaintiff*


SWORN TO AND SUBSCRIBED BEFORE ME

On this the 21 day of January , 2025.

_Alyssa Sanchez Wright_
Notary Public

My Commission Expires: 07-13-2028

ALYSSA SANCHEZ WRIGHT
Notary Public
Catawba County
My Comm. Exp.
07-13-28
NORTH CAROLINA